UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN HARRIS,<br><br>  Plaintiff,<br><br>  v.<br><br>BEAR VALLEY COMMUNITY SERVICE DISTRICT, BEAR VALLEY POLICE DEPARTMENT, CHIEF OF POLICE TERRY FREEMAN, SERGEANT JOSHUA MOTLEY, AND SERGEANT DAVID WATTS, OFFICER RODNEY WALTHERS,<br><br>  Defendants. | Case No.: 1:12-cv-01664 - JLT<br><br>ORDER GRANTING IN PART THE DISTRICT'S MOTION TO STRIKE (Doc. 38)<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(6) (Docs. 39, 40)<br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE COMPLAINT PURSUANT TO RULE 12(f)  (Doc. 42)<br><br>ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE (Doc. 47) |

  The defendants in this action seek dismissal of several of Plaintiff's claims presented in the First Amended Complaint ("FAC").  Defendant Motley seeks to have Plaintiff's claim for intentional infliction of emotional distress stricken as a Strategic Lawsuit Against Public Participation.  (Doc. 47). Bear Valley Community Service District ("the District"), Chief Freeman, Sgt. Watts, and Officer Walthers seeks to have certain portions of the FAC stricken pursuant to Rule 12(f) and several causes of action dismissed pursuant to Rule 12(b)(6).  (Docs. 38, 42).  Plaintiff filed her oppositions to these motions on July 30, 2013 (Docs. 53-60), to which the defendants replied on August 6, 2013. (Docs. 61-64).  The parties presented oral arguments at the hearing held on August 13, 2013.

### I. Plaintiff's Factual Allegations

Plaintiff is a former dispatcher with Bear Valley Police Department. (Doc. 29 at 2). She was hired as a part-time police dispatcher on September 16, 2006, and promoted to a full-time dispatcher on November 27, 2006. (Doc. 29 at 5, ¶ 16).

Plaintiff alleges she "participated in an internal investigation of allegations of pregnancy discrimination and retaliation brought by a Female Police Officer . . . against Defendant Chief Freeman and others" between July and August 2011. (Doc. 29 at 5, ¶ 16). (emphasis omitted). Plaintiff reports she "provided testimony, interviews, assisted and fully cooperated with the Internal Affairs investigation." (*Id.*)

Following her participation with the Internal Affairs investigation, Plaintiff alleges "Defendant Chief Freeman embarked on a campaign of retaliation" against her. (Doc. 29 at 5, ¶ 16). Plaintiff asserts she was summoned by Chief Freeman into his office on January 31, 2012, "and disciplined . . . for her union activity for changing employees' schedules based on seniority as had been the practice in the past." (*Id.*, ¶ 17). In addition, Plaintiff asserts Chief Freeman disciplined her "for a frivolous and false accusation that [she] had not supported a new dispatcher." (*Id.*)

According to Plaintiff, Chief Freeman "elevated his attack" on February 2, 2012 "by falsely accusing and charging her" with obstruction of justice and petty theft in violation of California Penal Code Sections 148 and 488. (Doc. 29 at 5, ¶18). Plaintiff explains that a birdbath "had been gifted to [her] by a long time quilting friend." (*Id.*) She reports her friend sold her house after gifting the birdbath to Plaintiff (after which Plaintiff, apparently, retrieved the birdbath), and the new homeowners reported theft of the birdbath. *Id.* However, Plaintiff asserts the homeowners did not want to press charges against Plaintiff after the birdbath was returned. (*Id.*) She alleges the new homeowners wrote a letter to the police on February 9, 2012, which stated:

> Dear Bear Valley Police, We recently reported the theft of a bird bath . . . The person who took it has returned the bird bath and we do not want to press charges against [Plaintiff]. We believe there were unclear areas of communication with [Plaintiff] and the previously (sic) owners. Thank you for your immediate help in clearing up the situation.

(Doc. 29 at 6, ¶18). Plaintiff contends that after "the home owners instructed the BVPD to . . . not press[] charges," Chief Freeman, Sgt. Motley, and Officer Walthers "ignored, suppressed, [and] buried"

this note, concealing it from the Kern County District Attorney. (*Id.* at 6-7, ¶¶19-20). She alleges Sgt. Watts "committed perjury by falsely filing a 'Probable Cause Declaration', asserting 'Facts establishing probable cause for arrest of [Plaintiff] for a 'violation of Penal Code Section 488- Theft and Penal Code Section 148(a)(1)-Interfering with an Investigation.'" (*Id.*, ¶19).

On February 22, 2012, the Kern County District Attorney filed a misdemeanor complaint against Plaintiff for violation of Cal. Penal Code § 488, stating: "On or about and between December 21, 2011 and February 1, 2012, Karen Jane Harris, did willfully and unlawfully steal, take, or carry away the personal property of another . . ." (Doc. 29 at 7, ¶ 21). Plaintiff was placed on paid administrative leave on February 24, 2012, and her employment with the BVPD was terminated on March 22, 2012. (*Id.*, ¶¶ 23-24). She reports the Kern County District Attorney requested the charges against Plaintiff be dismissed on June 29, 2012. (*Id.*, ¶ 22).

According to Plaintiff, "other similarly situated employees who had faced more serious criminal charges" did not receive the same treatment. (Doc. 29 at 7-8, ¶¶ 25- 27). She alleges: "[o]ther similar [sic] situated employees, most of whom were men" of the District and BVPD were "treated more favorably . . . in that said employees have engaged in conduct that violated laws and the policies . . . [and] no disciplinary action was taken against these employees." (*Id.* at 8, ¶ 27). In addition, Plaintiff alleges the individual defendants "sought and received personal favors, including sexual favors, from the younger women in exchange for more favorable terms and conditions of employment," and she "refused to partake in such changes." (*Id.* at 8-9, ¶ 28). Therefore, Plaintiff contends her "age and gender were motivating factors for Defendants' discriminatory treatment." *Id.*

Based upon these facts, Plaintiff raises nine causes of action in her First Amended Complaint: (1) violation of her First, Fourth, Fifth and Fourteen Amendment rights pursuant to 42 U.S.C. § 1983 against all Defendants; (2) negligent hiring, training, supervision, and retention against the District; (3) retaliation for exercising free speech in violation of 42 U.S.C. § 1983 against all Defendants; (4) retaliation in violation of California's Fair Housing Employment and Housing Act against the District; (5) discrimination/disparate treatment in violation of Title VII and FEHA against the District; (6) intentional infliction of emotional distress against the individual defendants; (7) wrongful termination in violation of public policy against the District; (8) retaliation in violation of Cal. Labor

Code § 1102.5 against the District; (9) supervisory liability against Chief Freeman.  (Doc. 29 at 9-20).

**III.     Rule 12(f) Motions to Strike (Doc. 38, 42)**

    **A.     Legal Standards**

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  A "redundant" matter is comprised "of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied."  *Wilkerson v. Butler*, 229 F.R.D. 166, 170  (E.D. Cal. 2005)).  An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)), *rev'd on other grounds*, 510 U.S. 517.

The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  In general, Rule 12(f) motions are disfavored and are not frequently granted.  *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1234 (S.D. Cal. 2004) (citing *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)).  "However, where the motion may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken."  *State of California ex rel. State Lands Comm'n v. U.S.*, 512 F. Supp. 36, 39 (N.D. Cal. 1981).

Challenged pleadings must be viewed in the light most favorable to the non-moving party.  *State Lands Comm'n*, 512 F. Supp. at 39.  Motions to strike pursuant to Rule 12(f)  "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F.Supp.2d 985, 990 (C.D. Cal.  2008); *see also LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992) (Rule 12(f) motions "are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of litigation").  Whether to strike a pleading is committed to the discretion of the Court.  *Fantasy*, 984 F.2d at 1527.

**B.    Discussion and Analysis**

The District requests the Court strike paragraphs 18 through 22 and paragraph 40 of Plaintiff's First Amended Complaint ("FAC"). (Doc. 38 at 2). In addition, the District seeks to have "[t]he phrase 'maliciously prosecuting her'" stricken from paragraph 43 "on the basis that the FAC asserts no cause of action for malicious prosecution. (*Id.*) Further, the District argues "[a]y reference to the Fifth Amendment of the Constitution" should be stricken from the FAC. (*Id.*)

1.    Paragraphs 18-22 and the phrase "maliciously prosecuting her"

According to the District, paragraphs 18 through 22 are immaterial because they "refer[] to the protected criminal prosecution of Plaintiff, which is not a basis of liability for Defendants." (Doc. 38 at 2). The District contends that "there is no malicious prosecution cause of action alleged in the FAC and . . . even if there were, it would fail as a matter of law" given applicable privileges and immunities. (*Id.* at 7-9). On the other hand, Plaintiff contends these paragraphs should not be stricken and because they "provide the factual underpinnings for the majority of her causes of actions, and as such, are not 'immaterial, impertinent or scandalous.'" (Doc. 54 at 6). To the contrary, Plaintiff argues these paragraphs "are central to [her] claims." (*Id.*)

The paragraphs identified appear to form the basis for a portion of Plaintiff's retaliation claims. In them, Plaintiff alleges Chief Freeman, Sgt. Motley, and Officer Walthers "ignored, suppressed, buried and intentionally failed to follow the expressed wishes of the home owner" and that Sgt. Watts signed a declaration, knowing "the facts which he was declaring under penalty of perjury were false." (Doc. 29 at 5-6, ¶¶18-20). Plaintiff contends the officers "presented the perjured declaration to the Kern County District Attorney for prosecution of [Plaintiff]," which resulted in charges being filed that were later dismissed. (*Id.* at 6-7, ¶20-22). Because these paragraphs have more than a "possible relation" to Plaintiff's claims, they should not be stricken pursuant to Rule 12(f). *See Friedman*, 580 F.Supp.2d at 990. Likewise, although Plaintiff does not raise a claim for malicious prosecution, it is clear what this phrase references by review of paragraphs 18-22. Consequently, the motion to strike these portions of Plaintiff's complaint is **DENIED**.

2.    Paragraph 40

According to the District, paragraph 40 should be stricken as immaterial because "it refers only

to the individual Defendants, but the Second Cause of Action is asserted against the District." (Doc. 38 at 2). Notably, paragraph 40 is repeated in the Third Cause of Action against the individual defendants (*see* Doc. 29 at 13, ¶ 46), and Plaintiff does not object to the request that paragraph 40 be stricken. Because paragraph 40 "has no essential or important relationship" to Plaintiff's Second Cause of Action against the District, it is immaterial. *Fantasy*, 984 F.2d at 1527. Accordingly, the District's motion to strike paragraph 40 pursuant to Rule 12(f) is **GRANTED**.

### 3. Fourth and Fifth Amendment claims

The District argues any references to the Fifth Amendment in the FAC should be stricken "on the basis that a local government entity cannot be liable for a Fifth Amendment violation." (Doc. 38 at 2). Likewise, the individual BVPD officers seek to strike any references to the Fourth and Fifth Amendment in the First Cause of Action. (Doc. 42). Importantly, however, the defendants filed their motions pursuant to Rule 12(f), which "does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 976 (9th Cir. 2010). The argument that a claim is precluded as a matter of law should be addressed pursuant to Rule 12(b)(6) or a motion for summary judgment, which "enables defendants to challenge the legal sufficiency of a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). Accordingly, Defendants' requests to strike references to the Fourth and Fifth Amendments under Rule 12(f) are **DENIED**.

### IV. Rule 12(b)(6) Motions to Dismiss (Docs. 39, 41)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal for "failure to state a claim upon which relief can be granted." *Id.* Thus, a Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court's "[r]eview is limited to the complaint alone; 'evidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (quoting *Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993)).

Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, the Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, "it stops short of the line between possibility and plausibility of entitlement to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

The Court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, a court "will dismiss any claim that, even when construed in the light most favorable to [the] plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. 1998). Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

**A.     Section 1983 Claims**

A litigant may raise "federal rights elsewhere conferred," including constitutional rights, through raising a claim under 42 U.S.C. § 1983 ("Section 1983"). *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In pertinent part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983. To demonstrate a Section 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) a constitutional right was deprived, and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 28 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

To sufficiently allege a Section 1983, a plaintiff must allege a causal relationship between the actions of the defendants and the injury suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362,

371-72, 377 (1976). The Ninth Circuit explained, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

### 1. First Cause of Action: Violation of Federal Civil Rights

Plaintiff alleges the BVPD officers are liable for violations of the First, Fourth, Fifth, and Fourteenth Amendments. (Doc. 29 at 9-10). Chief Freeman, Sgt. Watts and Officer Walthers seek dismissal of this cause of action, asserting Plaintiff's First Amendment claim is vague and not actionable against the individual defendants; Plaintiff failed to allege sufficient facts supporting a claim that her Fourth Amendment rights were violated; non-federal employees cannot be liable under the Fifth Amendment; and she "failed to allege any specific facts that her Due Process Rights were violated." (Doc. 41 at 2).

#### a. First Amendment

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). To state a cognizable claim for retaliation in violation of the First Amendment, Plaintiff must allege "(1) [s]he engaged in a constitutionally protected activity; (2) as a result, [s]he was subjected to adverse action that would chill a person of ordinary firmness from continuing to undertake the activity; and (3) there was a substantial causal relationship between the protected activity and the adverse action." *Id.* Accordingly, Plaintiff "must allege facts ultimately enabling [her] to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'" *Lacey v. Maricopa County*, 693 F.3d 896, 916-17 (9th Cir. 2012) (quoting *Hartman v. More*, 547 U.S. 250, 260 (2006)).

The Supreme Court determined that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). Consequently, because Plaintiff was a public employee, her speech must have been a matter of public concern to be protected, and she must have been speaking as a private citizen rather than a public employee. *Id.; see also Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (setting forth a test to assess retaliation claims of a public employee).

"Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community." *Eng*, 552 F.3d at 1070 (quoting *Johnson v. Multnomah Cnty., Or.*, 48 F.3d 420, 422 (9th Cir. 1995) (internal quotations omitted)). Speech concerning "individual disputes and grievances and that would be of no relevance to the public's evaluation of the performance of government agencies, is generally not of public concern." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (citation omitted).

Here, Plaintiff alleges she "engag[ed] in protected speech [by] partaking in an investigation within the Department." (Doc. 29 at 9, ¶ 32). According to Plaintiff, she "provided testimony, interviews, assisted and fully cooperated with the Internal Affairs investigation" "of allegations of pregnancy discrimination and retaliation" against Chief Freeman and others. (*Id.* at 5, ¶ 16). Because Plaintiff's speech involved allegations of discrimination and wrongdoing by BVPD officers, her speech was a matter of public concern. *See Alpha Energy*, 381 F.3d at 924 ("[W]hen government employees speak about corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees . . . their speech is inherently a matter of public concern").

Importantly, however, Plaintiff fails to allege specific facts to determine whether she made the statements in her capacity as a private citizen or a public employee. "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng*, 552 F.3d at 1071 (quoting *Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1121, 1126-27 (9th Cir. 2008)). The Ninth Circuit explained: "To satisfy this step of the inquiry against a motion to dismiss, [plaintiffs] would have to plead the official responsibilities . . . and identify the speech that they made in their capacities as private citizens (i.e., outside of their official duties)." *Couch v. Cate*, 379 Fed. Appx. 560, 563 (9th Cir. 2010). When a plaintiff fails to allege sufficient facts, as here, the proper remedy is to dismiss the claim with leave to amend. *Id.* Accordingly, Defendants' motion to dismiss the First Amendment claim is **GRANTED**.

    b.  Fourth Amendment

The Fourth Amendment proscribes a freedom from unreasonable searches and seizures. Specifically, the Fourth Amendment provides: "The right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U.S. Constitution, amend. IV*. Here, Plaintiff fails to identify which rights she believes Defendants violated. Plaintiff has the burden of stating her claim such that Defendants are notified of it and to set forth a plausible set of facts in support of the claim. *See Iqbal*, 556 U.S. at 678; *Bell Atl. Corp.*, 550 U.S. at 570 (a plaintiff must set forth more than conclusions and include "the grounds of his entitlement to relief"). Because it is unclear what Fourth Amendment right Plaintiff believes was violated, the defendants' motion to dismiss the claim is **GRANTED**.

      *c.*  *Fifth Amendment*

Plaintiff alleges a violation of her right to due process under the Fifth Amendment. (Doc.29 at 9). However, the Fifth Amendment applies only to actions by the federal government. *Rank v. Nimmo*, 677 F.2d 692, 701 (9th Cir. 1982). There must be a "significantly close nexus" between the federal government and the actor for the Fifth Amendment to apply to nonfederal entities or individuals. *Id*. Here, Plaintiff has not made any factual allegations regarding Defendants' connections to the federal government. Moreover, Plaintiff does not oppose the dismissal of this claim. Accordingly, the defendants' motion to dismiss, on these grounds, is **GRANTED** and Plaintiff's Fifth Amendment claim is **DISMISSED WITH PREJUDICE**.

      *d.*  *Fourteenth Amendment*

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." *U.S. Constitution, amend. XIV §1*. This clause guarantees both procedural and substantive due process, protecting individuals against the deprivation of liberty or property interest by the government.

A procedural due process claim "has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). A substantive due process claim requires a plaintiff to "show both a deprivation of liberty and conscience-shocking behavior by the government. *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). Here, Plaintiff alleges

"Defendants' actions have resulted in . . . a deprivation of her property interest in her employment, without providing [her] the due process attendant to such an action." (Doc. 29 at 9, ¶ 30). Thus, it appears Plaintiff seeks to state a claim for a violation of her right to procedural due process.

Significantly, however, as the defendants observe: "The problem with this claim is that Plaintiff provides no specific facts as to how her due process rights were allegedly violated. … Plaintiff does not allege that she was not given an opportunity to be heard and present a defense to the allegations in connection with her termination." (Doc. 41-1 at 14). Plaintiff does not allege sufficient facts to support a determination that there was a "lack of process." Because Plaintiff fails to state a cognizable claim for a violation of the Fourteenth Amendment, the defendants' motion to dismiss the complaint, on this ground, is **GRANTED**.

    2.  Second Cause of Action:  Negligent Hiring, Training, Supervision and Retention

As a general rule, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains. *Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002). Thus, a government entity may be sued under § 1983 when governmental policy or custom is the cause of a deprivation of federal rights. *Id.* at 694.

To establish liability, Plaintiff must show: (1) she was deprived of a constitutional right; (2) the District had a policy; (3) this policy amounted to deliberate indifference of her constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell*, 436 U.S. at 690-92. There are three methods by which a policy or custom of a government may be demonstrated when:

> (1) A longstanding practice or custom…constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
> (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum v. Fresno Police Dep't*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). Here, notably, there is no allegation or factual support for the proposition that any of the individuals were policymakers for the District.

On the other hand, liability of a government entity "is at is most tenuous" when based upon allegations it failed to train its employees. *Connick*, 131 S.Ct. 1359. A properly pleaded action based upon a failure to train must set forth sufficient facts to demonstrate the entity acted with "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S., at 388. A policy amounts to deliberate indifference where "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (citing *Oviatt*, 954 F.2d at 1477-78); accord *Canton*, 489 U.S. at 390. To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson,* 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'"*Connick* at 1359-60.

Plaintiff alleges the District is liable for "negligent hiring, training, supervision and retention of the individual Defendants" because the "Defendants' actions and failures as alleged constitute a pattern, practice, policy and custom of violations of employees (sic) Civil Rights." (Doc. 29 at 10-11, ¶¶ 35-36) (emphasis omitted). According to Plaintiff, the District "through regular supervisions, assessment review, observations, and obligations as an employer knew, or should have known, that individual Defendants were unfit for their duties, and that their unfitness created a particular risk of constitutional violations for employees." (*Id.* at 11, ¶ 36). Importantly, Plaintiff has not alleged any facts to support this contention.

Although Plaintiff alleges the "pattern, policy and custom of unconstitutional intentional retaliation [is] evidenced by individual Defendants' retaliation against [Plaintiff]" (Doc. 29. at 11, ¶ 35), she has not identified any other events to establish that an unconstitutional policy or custom existed.  The standard for deliberate indifference "is incredibly high; one that requires the plaintiff to establish more than one incident to create a patterned and pervasive violation." *Jaquez v. County of Sacramento*, 2011 U.S. Dist. LEXIS 11165, at *6 (E.D. Cal. Feb. 1, 2011) (citing *Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985)).  As a result, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Because Plaintiff fails to plead sufficient facts to support a finding that the District had an unconstitutional policy or custom, Defendants' motion to dismiss this cause of action is **GRANTED**.

### 3.     Third Cause of Action: 42 U.SC. § 1983 against the Individuals

Plaintiff's Third Cause of Action is stated against all the defendants, as opposed to the First Cause of Action, which was raised against the individual defendants. (*See* Doc. 29 at 12). For the reasons set forth above, Plaintiff's retaliation claim against all Defendants is **DISMISSED WITH LEAVE TO AMEND**.

### 4.     Fourteenth Cause of Action:  Supervisor Liability[1]

The supervisor of an individual who allegedly violated a plaintiff's constitutional rights is not made liable for the violation simply by virtue of that role. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  In addition, supervisor liability exists "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885, F.2d 642, 646 (9th Cir. 1989). A causal link between a

---

[1] Plaintiff's Ninth Cause of Action is erroneously labeled the "Fourteenth Cause of Action" in her First Amended Complaint.  For the sake of clarity, the Court refers to this cause of action as it is labeled by Plaintiff in the pleading.

supervisor and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).

Here, Plaintiff alleges Chief Freeman may be held liable "as the supervisor . . . because Chief Freeman knew, or in the exercise of reasonable diligence should have known, that by his actions of submitting fraudulent information to the Kern County District Attorney, [Plaintiff] would be criminally prosecuted in violation of her federal and state constitutional rights." (Doc. 29 at 19, ¶ 69). Curiously, this is the only statement in the complaint indicating Chief Freeman submitted information to the Kern County District Attorney. Rather, Plaintiff alleges the declaration submitted to district attorney was signed by Sgt. Watts. (*Id.* at 6, ¶ 20). Regardless Plaintiff has not pleaded sufficient facts to support her claims that the subordinate officers committed constitutional violations. Further, as the defendants argue, Plaintiff "failed to plead any facts which would create any distinct liability under this claim." (Doc. 41-1 at 22). The defendants' motion to dismiss this cause of action is **GRANTED**.

**B.     Sixth Cause of Action: Intentional Infliction of Emotional Distress[2]**

To state a cognizable claim for intentional infliction of emotional distress ("IIED"), Plaintiff must allege: (1) outrageous conduct by the defendants (2) who intended to cause or recklessly disregarded the probability of causing emotional distress, (3) and the defendants' actions were the actual and proximate cause (4) of Plaintiff's severe emotional suffering. *Austin*, 367 F.3d at 1172 (citing *Brooks*, 29 F. Supp. 2d at 617).

Plaintiff has failed to allege sufficient facts to demonstrate the elements of the tort. Thus, the motion to dismiss is **GRANTED with leave to amend.**

///

///

---

[2] Defendants argue the IIED claim should be dismissed because it is "duplicative and superfluous" given "the only alleged wrongful conduct is the very same alleged wrongful conduct which supports the Section 1983 claims." (Doc. 41-1 at 5). However, Plaintiff argues, "Although plaintiff's factual allegations supporting her Section 1983 claims overlap with her claim for Intentional Infliction of Emotional Distress, they are not duplicative as the elements necessary to prove . . . [the] claims are different." (Doc. 55 at 7). Because a plaintiff may raise separate causes of action under federal and state laws "based upon the same core of operative facts," *Martin v. School District No. 394,* 393 F. Supp. 2d 1028, 1035 (D. Idaho 2005), the motion to dismiss, on this ground, is **DENIED**.

## II. Motion to Strike: Anti-SLAPP (Doc. 47)

Defendants seek to strike Plaintiff's claim for intentional infliction of emotional distress pursuant to Cal. Code Civ. Proc. § 425.16, which "provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump University*, 715 F.3d 254, 261 (9th Cir. 2013) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809 (1994)). Motley's motion is joined in by Freeman, Watts and Walthers (Doc. 48) and the District. (Doc. 52)

California's anti-SLAPP statute was enacted "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *see also Dickens v. Provident Life and Acc. Ins. Co.,* 117 Cal. App. 4th 705, 713 (2004) (explaining a SLAPP is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights"). In relevant part, Section 425.16 provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b). Accordingly, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002).

When ruling on a motion to strike pursuant to Section 425.16, the Court engages in a two-step process. *Metabolife Int'l*, 264 F.3d at 839; *Daniels v. Robbins*, 182 Cal. App. 4th 204, 214 (2010). First, a defendant bears the initial burden to demonstrate the challenged causes of action arise from an act in furtherance of the defendant's right of petition or free speech, including:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the

constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).  If the moving party satisfies this burden, the burden shifts to the plaintiff to demonstrate the probability of prevailing on the challenged claim.  *Metabolife Int'l*, 264 F.3d at 840; *Daniels*, 182 Cal. App. 4th at 214.  Specifically, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 741 (2003) (citation omitted).

> A. **Government employees are not excluded from the protections of the anti-SLAPP statute**

The anti-SLAPP statute does not apply unless the defendant's conduct underpinning a plaintiff's cause of action involved an act in furtherance of the defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." See § 425.16, subd. (b)(1); and *see also City of Cotati*, 29 Cal.4th at 78.

In *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2008), the Court held that when a public employee speaks on a topic that is within the scope of his employment and upon which he is duty-bound to speak, the First Amendment is not implicated.  Seemingly, then, when a police officer issues a probable cause declaration or authors a law enforcement report, a lawsuit which challenges that report is not one that would implicate an anti-SLAPP motion.  However, in *Schaffer v. City & Cnty. of San Francisco*, 168 Cal.App.4th 992, 1001 (2008) a California Court of Appeal rejected that *Garcetti* was determinative because Cal. Code Civ. Pro. § 425.16 "also applies to acts protected under the California Constitution."

After this, the California Supreme Court held,

> Whether or not the First Amendment of the federal Constitution or article I, section 2 of the California Constitution directly protects government speech in general or the types of communications of a municipality that are challenged here—significant constitutional questions that we need not and do not decide—we believe it is clear, in light of both the language and purpose of California's anti-SLAPP statute, that the statutory remedy afforded by section 425.16 extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity.

*Vargas v. City of Salinas*, 46 Cal. 4th 1, 17 (2009).  Moreover, California Courts of Appeal have determined that officers who prepare investigatory reports and probable cause declarations are entitled

16

to the protections of the anti-SLAPP statute. *Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal.App.4th 1537, 1544 (2008). Thus, the fact that the acts were taken while in the course and scope of their governmental employment, does not exclude Defendants from the protections of Cal. Code Civ. Pro. § 425.16.

### B. The cause of action addresses protected and non-protected activity

Motley argues that despite the fact that the IIED cause of action incorporates all of the previous allegations, "the gravamen of Plaintiff's claims targets the Internal Affairs investigation, the theft investigation, and the District's disciplinary response . . ." However, Plaintiff's claim for intentional infliction of emotional distress is not based completely upon the statements of the BVPD officers provided to the Kern County District Attorney. She also alleges all defendants are liable for intentional infliction of emotional distress for quid pro quo sexual harassment. (Doc. 29 at 8-9 ¶ 28). Likewise, she alleges the District subjected her to gender discrimination, retaliation and wrongful discharge.

According to Plaintiff, her "age and gender were motivating factors for the Defendants' discriminatory treatment because individual Defendants sought and received personal favors, including sexual favors, from the younger women in exchange for more favorable terms and conditions of employment." (*Id*. at 8-9, ¶ 28). Plaintiff contends she "refused to partake in such exchanges." (*Id*. at 8). She alleges her termination "clearly reveals Defendants' retaliatory and discriminatory intent" when compared to treatment "received by other similarly situated employees." (*Id*. at 7, ¶ 25). Because Plaintiff's claim for IIED is based both upon the alleged "malicious prosecution" and then events leading up to it and sexual harassment, retaliation, discrimination and wrongful discharge, Plaintiff "has based liability on both protected and unprotected activity." *See Wallace v. McCubbin*, 196 Cal.App.4th 1169, 1196 (2011).

If liability is not founded on the protected activity, anti-SLAPP does not apply. The California Supreme court has warned that "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *In re Episcopal Church Cases*, 45 Cal.4th 467, 477 (2009). "The additional fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform [an employment] dispute into a SLAPP suit." *Id*. at 478. The anti-SLAPP statue may apply to complaints or causes of

action that raise both protected and non-protected activity if the protected activity is "'merely incidental' to the unprotected conduct." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal.App.4th 658, 672 (2005).

Allegations of protected conduct are not "merely incidental" when "[t]he allegations of protected conduct . . . represent the bulk of the allegations underlying the cause of action." *Salma*, 161 Cal.App.4th at 1288. Further, allegations are not "merely incidental" when they are "acts for which [the plaintiff] asserts liability and seeks damages," and "provide an independent basis for liability." *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 184 Cal.App.4th 1539, 1553 (2010).

Here, the cornerstone of this dispute centers around alleged retaliation and Plaintiff's subsequent firing. Indeed, in part, Plaintiff seeks emotional distress damages based upon her allegations that Defendants infringed on *her* First Amendment rights through retaliation. Though, clearly, Plaintiff alleges the criminal prosecution was an act of retaliation, there is little evidence to demonstrate this case, or even this particular cause of action, is *based upon* Motley's statements or the police reports of Walthers and Watts.[3] It is notable that there is no malicious prosecution cause of action nor is there an attempt to impose liability upon the protected acts alone. Though the Court does not find that anti-SLAPP could not apply but, as the complaint is currently alleged, the gravamen of the complaint or the IIED cause of action is not the protected activity of Defendants.[4]

Moreover, as explained above, if proven, damages for IIED may be recovered based upon the same factual predicate as those alleged in support of the 42 U.S.C. § 1983 claims. Thus, the anti-SLAPP motion is **DENIED**.

V. **Conclusion and Order**

Because Plaintiff may cure the deficiencies of her pleading by providing sufficient facts to state a claim, leave to amend will be granted for Plaintiff's First, Second, Third, Sixth and Fourteenth Causes of Action. *See Lopez*, 203 F.3d at 1130 (dismissal with leave to amend is proper where it is not obvious

---

[3] However, the Court is hard-pressed to find any evidence that Freeman engaged in any protected activity related to the investigation or criminal prosecution.

[4] The Court does not disagree that the IIED claim is likely improperly brought against Motley, Watts and Walthers for reasons unrelated to the protected activity. However, as is done here, the Court finds the proper path is to follow is to consider as set forth above whether the cause of action is *based upon* the protected activity than to chip away of the cause of action until nothing but the protected activity remains and then consider the anti-SLAPP motion.

that amendment would be futile); *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff is reminded that a complaint is not sufficient "if it tenders naked assertions devoid of further factual enhancement" and that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 677.   She must offer more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.*

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Defendants' special motion to strike (Doc. 47) is **DENIED**;
2. The District's motion to strike pursuant to Rule 12(f) (Doc. 38) is **GRANTED IN PART**, and paragraph 40 is **STRICKEN**;
3. The motion to strike pursuant to Rule 12(f) by Freeman, Watts and Walthers (Doc. 42) is **DENIED**;
4. The District's motion to dismiss pursuant to Rule 12(b)(6) (Doc. 39) is **GRANTED**;
5. The motion to dismiss pursuant to Rule 12(b)(6) by Freeman, Watts, and Walthers (Doc. 41) is **GRANTED**;
6. Plaintiff's Sixth Cause of Action for intentional infliction of emotional distress is **DENIED**;
7. Plaintiff's claim for a violation of the Fifth Amendment is **DISMISSED WITH PREJUDICE**; and
8. Plaintiff is **GRANTED** leave to amend as to her First, Second, Third, Sixth and Fourteenth Causes of Action.  Plaintiff **SHALL** file a Second Amended Complaint within twenty-one days of the date of service of this order.

IT IS SO ORDERED.

Dated:   **August 14, 2013**               /s/ Jennifer L. Thurston
                                                  UNITED STATES MAGISTRATE JUDGE